

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
AT HUNTINGTON

**FILED**

AUG 2 5 1999

SAMUEL L. KAY, CLERK
U. S. District & Bankruptcy Courts
Southern District of West Virginia

GRADY COLIN KELLY,

        Plaintiff,

v.                                      Civil Action No. 3-99-0730

NORFOLK & SOUTHERN RAILWAY
COMPANY, d/b/a NORFOLK &
WESTERN RAILWAY COMPANY

        Defendant.

## NORFOLK SOUTHERN RAILWAY COMPANY'S NOTICE OF REMOVAL

COMES NOW the Defendant, Norfolk & Southern Railway Company (sic), d/b/a Norfolk and Western Railway Company ("NSRC"), and pursuant to the provisions of 28 U.S.C. § 1446, gives notice of the removal of the case styled as "**GRADY COLIN KELLY, Plaintiff vs. NORFOLK & SOUTHERN RAILWAY COMPANY, d/b/a NORFOLK & WESTERN RAILWAY COMPANY, Defendnt**," Civil Action No. 99-C-128, pending in the Circuit Court of Wayne County, West Virginia to this Court. As grounds for the removal of this action to this Court, NSRC states as follows:

1.      The Plaintiff instituted this civil action in the Circuit Court of Wayne County, West Virginia, against NSRC on June 29, 1999.

2.      Service of the Summons and Complaint in this matter was made upon Ken Hechler, West Virginia's Secretary of State, on behalf of NSRC on August 6, 1999. The Summons and Complaint were forwarded to NSRC's registered agent for service of process on August 6, 1999, and received by NSRC on that day. A copy of the Summons and Complaint are attached hereto Exhibit A. Other than the Summons and Complaint, no other pleadings, process or orders have

been served upon NSRC in this action.

3.     NSRC is currently required to answer or otherwise plead in response to Plaintiff's Complaint on or before August 26, 1999. This Notice of Removal, filed on August 25, 1999, is therefore timely under 28 U.S.C. § 1446(a) as it is filed within thirty days after receipt by NSRC, through service or otherwise, of a copy of the Complaint filed against it in this case. Pursuant to Rules 81(c) and 6(a), as the result of this Removal, CSXT is now required to Answer or otherwise plead in response to Plaintiff's Complaint on or before September 1, 1999.

4.     In his Complaint filed in this case, the Plaintiff asserts two causes of action against NSRC based upon the same operative facts, one for intentional infliction of emotional distress under the Federal Employers' Liability Act, 45 U.S.C. § 51, *et seq.*, the other for intentional infliction of emotional distress under West Virginia common law.

5.     Both Counts of Plaintiff's Complaint involve his allegations that he, along with other employees, were subjected to retaliatory actions by NSRC for raising safety concerns or making safety complaints by reporting on-the-job injuries. Specifically, Plaintiff alleges that NSRC engaged in intentional actions against the Plaintiff and other employees calculated to create "a work environment hostile to all employees injured while on the job" and engaged in intentional and retaliatory actions against the Plaintiff and others who reported on-the-job injuries, including "severe[] reprimand[s]" and/or termination. In other words, Plaintiff alleges that NSRC engaged in conduct and created a working environment intended to discourage or prevent employees from raising safety issues, including accident reports, and reprimanded and/or terminated employees who raised such issues or made such reports.

6.     In this case, both Counts of Plaintiff's Complaint are based upon his allegations that

he, and other NSRC employees, were subjected to adverse employment actions by NSRC to discourage safety complaints and accident reports and were subjected to reprisals for making such complaints or reports. As both this Court and the Fourth Circuit have expressly recognized, however, Plaintiff's claims against NSRC in this case are preempted by Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20101 *et seq.* See Rayner v. Smirl, 687 F. Supp. 997 (D. Md. 1988), aff'd, 873 F.2d 60 (4th Cir. 1989); Johnson v. CSX Transportation, Inc., Civil Action No. 2:97-0895 (S.D. W.Va. 1998).[1] Specifically, § 20109[2] of the FRSA, which protects railroad employees from harassment, discrimination, or discharge by their employer for reporting safety violations or making safety complaints of any type, is Plaintiff's exclusive remedy for NSRC's alleged conduct or actions as alleged in Plaintiff's Complaint. See Rayner, 873 F.2d at 64-65.

6.    In Rayner, the Fourth Circuit held that the FRSA, and specifically 49 U.S.C § 20109, "completely preempt[s]" all remedies not specified in § 20109 that the Plaintiff might have arising out of the conduct such as that alleged in Plaintiff's Complaint. See Rayner, 687 F. Supp. at 996-97; 873 F.2d at 63, 67. Similarly, in Johnson, Judge Copenhaver of this Court specifically held that § 20109 of the FRSA preempts intentional infliction of emotional distress claims that are based upon retaliatory conduct against a railroad employee for making safety related complaints. Applying the "well-pleaded Complaint" rule to Plaintiff's allegations that he had been retaliated against by his railroad employer for making complaints and reports about safety and his claim

---

[1]    A copy of this Court's Memorandum Order and Judgment Order in Johnson are attached hereto as Exhibit B.

[2]    The Federal Railroad Safety Act was recently recodified by Congress. Prior to the recodification, the FRSA was codified at 45 U.S.C. § 421 *et seq.*, and the protections afforded to railroad employees by the FRSA were codified at 45 U.S.C. § 441.

based upon those allegations for intentional infliction of emotional distress, Judge Copenhaver held that § 20109 of the FRSA "completely preempted" Plaintiff's claim and fully supported both the removal of the case to federal court and the dismissal of Plaintiff's claim as preempted by § 20109.

7.      In the present case, both Counts of Plaintiff's Complaint are preempted by § 20109 of the FRSA and are therefore "completely preempted" by federal law.  As such, any claim purportedly based on preempted law is considered, from its inception, to be a federal claim, and therefore arises under federal law. Rayner, 873 F.2d at 63.  Consequently, Plaintiff's claims arise under the laws of the United States for purposes of 28 U.S.C. § 1331 and 28 U.S.C § 1441(b) and (c).

7.      Plaintiff's claims are further preempted, in whole or in part, by the provisions of the Railway Labor Act ("RLA"), 45 U.S.C. § 151 *et seq.*  At all times relevant to the allegations contained in Plaintiff's Complaint, Plaintiff's employment rights with NSRC were created, governed and controlled by a collective bargaining agreement between NSRC and a labor organization or union of which Plaintiff was a member.  In his Complaint, Plaintiff alleges, *inter alia*, that disciplinary hearings or investigations (which are conducted pursuant to the collective bargaining agreement between the Plaintiff and his labor organization) were improperly conducted or threatened against employees who made safety complaints or made incident or accident reports. Because these allegations involve and/or implicate employment rights created by the collective bargaining agreement, resolution of Plaintiff's claims depends, in whole or in part, upon interpretation and application of Plaintiff's collective bargaining agreement.  As such, Plaintiff's claims as contained in his Complaint are preempted, in whole or in part, by the RLA.

8.      Where, as here, a Plaintiff's state law claims are preempted by the RLA, the action may properly be removed to federal court. Shafii v. British Airways, PLC, 83 F.3d 566 (2nd Cir. 1996).

4

9.    Based upon the foregoing, this action is properly removable to this Court pursuant to the provisions of 28 U.S.C. § 1331 and 28 U.S.C. § 1441(b).

WHEREFORE, Defendant Norfolk Southern Railway Company submits this Notice of Removal for the consideration of the Court herein and hereby gives notice to the Clerk of the Circuit Court of Wayne County, West Virginia, that said Removal is hereby effected and that no further action by the Circuit Court shall take place unless this action be remanded by this Court.

NORFOLK SOUTHERN RAILWAY COMPANY

By _____
                                    Of Counsel

J.H. Mahaney, Esquire
West Virginia Bar No.: 6993
HUDDLESTON, BOLEN, BEATTY,
        PORTER & COPEN
Post Office Box 2185
Huntington, West Virginia
(304) 529-6181
        Counsel for Defendant,
        **NORFOLK SOUTHERN RAILWAY COMPANY**

# EXHIBIT A

S U M M O N S

CIRCUIT COURT OF WAYNE COUNTY, WEST VIRGINIA

Civil Action No. 99-C-128

GRADY COLIN KELLEY

Plaintiff

V.                              ) Summons

NORFOLK & SOUTHERN RAILWAY CO.,

d/b/a/ NORFOLK & WESTERN RAILWAY COMPANY

C/O FRED ADKINS, ESQUIRE, 611 3RD.AVE., HUNTINGTON

Defendant

*To the Above-named Defendant:*

     IN THE NAME OF THE STATE OF WEST VIRGINIA, you are hereby Summoned and required to

serve upon        THOMAS PLYMALE                          , plaintiff's attorney,

whose address is     P.O. BOX 37, WAYNE, WV. 25570                  , an answer,

including any related counterclaim you may have, to the complaint filed against you in the above styled

civil action, a true copy of which is herewith delivered to you.  You are required to serve your answer

within        20           days after service of this summons upon you, exclusive of the day of ser-

vice. If you fail to do so, judgement by default will be taken against you for the relief demanded in the

complaint and you will be thereafter barred from asserting in another action any claim you may have which

must be asserted by counterclaim in the above styled civil action.

Dated     JUNE     29, 1999

                                        MILTON J. FERGUSON II

                                        *Clerk of Court*

                              By   *Cathy Ferguson*

                                   *Deputy Clerk*

IN THE CIRCUIT COURT OF WAYNE COUNTY, WEST VIRGINIA

GRADY COLIN KELLEY,                )
                                   )
            Plaintiff,             )
                                   )
vs.                                )        Civil Action No. _99-C-128_
                                   )
NORFOLK & SOUTHERN RAILWAY         )
COMPANY, d/b/a NORFOLK             )
& WESTERN RAILWAY COMPANY          )
                                   )
            Defendant.             )
                                   )
PLEASE SERVE SUMMONS ON:           )
                                   )
Mr. Fred Adkins                    )
611 Third Avenue                   )
Huntington, WV 25701               )

## COUNT I – Federal Employers' Liability Act

COMES NOW Plaintiff, GRADY COLIN KELLEY, and his attorneys, THE

LAKIN LAW FIRM, P.C. and MICHAEL SPARKS, and for Count I of his cause of

action against the Defendant, NORFOLK & SOUTHERN RAILWAY COMPANY

d/b/a NORFOLK & WESTERN RAILWAY COMPANY, a Corporation, alleges as

follows:

1.      That on or about May 1, 1998, for some time prior thereto, and

continuing through the present, the Defendant was engaged in the business of

interstate commerce in and throughout the several states of the United States as

a common carrier by railroad; and for the purpose thereof did operate and do

business in and about Wayne County, in the State of West Virginia.

2.     That at said time and prior thereto, Plaintiff was employed by the Defendant and was engaged in the performance of his duties as such worker at the time he was injured on the aforesaid date as hereinafter alleged.

3.     That at said time, prior thereto, and continuing through the present, Defendant was engaged in interstate commerce as a common carrier by railroad, and all or part of Plaintiff's duties as an employee of the Defendant were in furtherance of interstate commerce and closely, directly and substantially affected the same, by reason whereof the rights and liabilities of the parties were governed by the Act of Congress known as the Federal Employers' Liability Act, 45 U.S.C., §51 *et seq.*.

4.     That Defendant, by and through its employees and agents, was then and there was guilty of one or more of the following intentional acts or omissions with the intent to cause Plaintiff to suffer severe mental anguish and emotional distress in violation of the Federal Employers' Liability Act:

(a)   Created a work environment hostile to all employees injured while on the job;

(b)   Made it known that any employee who files a claim for an on-the job injury would be severely reprimanded and/or terminated;

(c)   Used armed agents to invade Plaintiff's privacy and conduct surveillance on a near constant basis for more than one year;

(d)   Threatened to have Plaintiff criminally prosecuted unless he voluntarily dismissed his lawfully filed claim under the Federal Employer's Liability Act for injuries received while on the job on October 11, 1990.

5.     Wholly or partly as a result of the aforementioned intentional acts or omissions on the part of Defendant, Plaintiff suffered, and will continue to suffer

extreme mental anguish; Plaintiff has lost wages and will continue to lose wages in the future from his employment; all to Plaintiff's damages in an amount in excess of the jurisdictional limits.

WHEREFORE, plaintiff, GRADY COLIN KELLEY, prays for judgment in his favor and against defendant, NORFOLK & SOUTHERN RAILWAY COMPANY d/b/a NORFOLK & WESTERN RAILWAY COMPANY, a Corporation, in a fair and reasonable amount in excess of the jurisdictional limits, together with his costs herein expended, and for such other and further relief as the Court deems just and proper in these circumstances.

PLAINTIFF DEMANDS TRIAL BY JURY

## COUNT II – Intentional Infliction of Emotional Distress

COMES NOW Plaintiff, GRADY COLIN KELLEY, and his attorneys, THE LAKIN LAW FIRM, P.C. and MICHAEL SPARKS, and for Count II of his cause of action against the Defendant, NORFOLK & SOUTHERN RAILWAY COMPANY d/b/a NORFOLK & WESTERN RAILWAY COMPANY, a Corporation, alleges as follows:

1. – 4. Plaintiff repeats, incorporates and realleges paragraphs 1 – 4 of Count II above as if more fully set out herein as paragraphs 1 – 4 of Count III.

5.      Defendant's conduct as set forth above was intentional and/or reckless.

6.      Defendant's conduct was outrageous and intolerable in that it offends the generally accepted standards of decency and morality in this society.

7.   As a direct result of Defendant's conduct, Plaintiff has suffered and continues to suffer severe emotional distress all to his damages.

WHEREFORE, plaintiff, GRADY COLIN KELLEY, prays for judgment in his favor and against defendant, NORFOLK & SOUTHERN RAILWAY COMPANY d/b/a NORFOLK & WESTERN RAILWAY COMPANY, a Corporation, in a fair and reasonable amount in excess of the jurisdictional limits, together with his costs herein expended, and for such other and further relief as the Court deems just and proper in these circumstances.

PLAINTIFF DEMANDS TRIAL BY JURY


PLYMALE LAW OFFICE                               THE LAKIN LAW FIRM

By _____        By _____
Thomas Plymale                                      Charles W. Armbruster III
State Bar No.  2922                                  Bradley M. Lakin
P.O. Box 627                                            301 Evans Avenue
Wayne, WV  25570                                 P.O. Box 229
(304) 272-3706                                        Wood River, Illinois 62095
                                                               (618) 254-1127

# EXHIBIT B

.



UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

CALVIN T. JOHNSON,

       Plaintiff

v.                             Civil Action No. 2:97-0895

CSX TRANSPORTATION, INC., a foreign
corporation; THOMAS PRESTON CRAWFORD,
individually; and THOMAS M. McQUAIN,
individually,

       Defendants

## JUDGMENT ORDER

In accordance with the memorandum order this day entered in the above-styled civil action, it is ORDERED and ADJUDGED that Counts I, II, and IV of plaintiff's amended complaint be, and they hereby are, dismissed with prejudice and that judgment thereon be entered in favor of the defendant and against the plaintiff who shall take nothing. For the reasons set forth in that same memorandum order, it is further ORDERED and ADJUDGED that Count III of plaintiff's amended complaint be, and it hereby is, dismissed without prejudice.

All matters in this case having been determined, it is further ORDERED that this civil action be stricken from the docket of this court, with each party to bear its own costs.

The Clerk is directed to forward copies of this order to all counsel of record.

DATED: November 18, 1998

JOHN T. COPENHAVER, JR.
United States District Judge

NOV 18 1998

SAMUEL L. KAY, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia
By _____ Deputy

2

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF WEST VIRGINIA
AT CHARLESTON

```
┌─────────────────────────────────────┐
│           ENTERED                    │
│    ┌──────────────────┐              │
│    │   NOV 18 1998     │             │
│    └──────────────────┘              │
│    SAMUEL L. KAY, CLERK              │
│    U. S. District & Bankruptcy Courts│
│    Southern District of West Virginia│
└─────────────────────────────────────┘
```

CALVIN T. JOHNSON,

      Plaintiff

v.                          Civil Action No. 2:97-0895

CSX TRANSPORTATION, INC., a foreign
corporation; THOMAS PRESTON CRAWFORD,
individually; and THOMAS M. McQUAIN,
individually,

      Defendants

MEMORANDUM ORDER

      This matter is before the court on defendants Thomas
Preston Crawford and Thomas M. McQuain's motion to dismiss, filed
November 21, 1997, and defendant CSX Transportation, Inc.'s
motion to dismiss, filed November 24, 1997.

## I.  Background

      Prior to the institution of the above-styled action,
plaintiff was employed by CSX Transportation, Inc. ("CSX") as a
track inspector at its St. Albans facility.  Plaintiff was
directly supervised by Thomas Preston Crawford ("Crawford"),
roadmaster at the St. Albans facility.  Thomas M. McQuain
("McQuain") was also employed at the railroad's St. Albans
facility as trainmaster.  On August 6, 1996, defendants Crawford

and McQuain accused plaintiff of working while under the
influence of alcohol and requested that plaintiff submit to a
urine alcohol test.  Plaintiff submitted to such a test,
providing two urine samples within an hour of his employer's
request.  Immediately thereafter, plaintiff was ordered off the
job.  The samples were sent to CompuChem Laboratories for testing
on August 8, 1996.

On August 9, 1996, plaintiff was charged with violating
Rule G of CSX's Operating Rules.[1]  Under Rule G, employees of CSX
have the option to enter into a "Rule G By-Pass," pursuant to
which formal disciplinary charges are held in abeyance pending
the employee's successful completion of CSX's substance abuse
treatment program.  Employees must elect to do so within five
days of receipt of their charge notice.  Otherwise, a
disciplinary hearing on the charges will be scheduled.  Having
missed the deadline for exercising his option to postpone
disciplinary proceedings until his successful completion of the
railroad's substance abuse program, plaintiff was required to

_____

[1] Operating Rule G is a work rule promulgated by CSX which
prohibits employees from reporting for duty or performing service
while under the influence of drugs or other substances, including
alcohol, that might adversely affect the employee's ability to
safely perform his job and from using illegal drugs or other
substances while on or off duty.  (CSX's Memorandum of Law in
Support of Motion to Dismiss, at Exh. C).

2

attend a hearing with respect to the disciplinary charges brought against him on September 27, 1996.  Plaintiff requested copies of the results of his urine alcohol test in advance of the hearing, but did not receive the results prior to the hearing.[2]

Based upon the evidence presented at the hearing, including the testimony of Crawford and McQuain that plaintiff physically appeared to be under the influence of alcohol on the morning in question, plaintiff's employment with CSX was terminated.  On November 4, 1996, the Brotherhood of Maintenance of Way Employees ("BMWE"), acting on behalf of plaintiff, grieved plaintiff's termination in accordance with the terms of the collective bargaining agreement between CSX and the BMWE.  On January 2, 1997, CSX denied plaintiff's grievance and upheld its earlier decision to terminate plaintiff.  Pursuant to the provisions of the collective bargaining agreement, plaintiff

---

[2] Plaintiff contends that he repeatedly requested the results of his urine alcohol test prior to his disciplinary hearing to no avail.  Plaintiff further contends that the test was negative and that defendants were aware of this at the time of the hearing, but failed to enter the negative test results into evidence at the hearing.  The defendants argue that such test results were not withheld from plaintiff nor purposely concealed during the hearing inasmuch as the lab tested for the presence of five different drugs but failed to test for the presence of alcohol.

appealed his dismissal to the National Railroad Adjustment
Board.[3]

        Plaintiff filed an action in the Circuit Court of
Kanawha County, West Virginia, on August 6, 1997, alleging six
state law causes of action, including Count I wrongful discharge
and Count II outrageous conduct against CSX, Crawford, and
McQuain, Count III defamation against CSX, Count IV defamation
against Crawford and McQuain, Count V civil conspiracy against
CSX, Crawford, and McQuain, and Count VI punitive damages against
CSX.  Defendant CSX removed the action to this court on September
10, 1997.  Defendants Crawford and McQuain subsequently consented
to and joined in CSX's notice of removal.  Defendant CSX filed a
motion to dismiss on September 17, 1997, on the grounds that the
court lacked subject matter jurisdiction over certain of
plaintiff's claims and that plaintiff's civil conspiracy claim
was one upon which relief could not be granted.  Defendants
Crawford and McQuain jointly filed a motion to dismiss on
September 30, 1997, on identical grounds.[4]

---

   [3] At the time the defendants filed their motions to dismiss,
plaintiff's appeal to the National Railroad Adjustment Board
("NRAB") was pending.  At this time, the court has no knowledge
as to the outcome of plaintiff's NRAB appeal.

   [4] CSX argued that plaintiff's claims for wrongful discharge,
outrageous conduct, and defamation were preempted by the Federal

4

Plaintiff filed a motion for leave to file an amended complaint on October 6, 1997, pursuant to which plaintiff conceded that his wrongful discharge claim was preempted by the Federal Railroad Safety Act inasmuch as his claim was based on allegations that he was discharged in retaliation for making safety complaints.  Further, plaintiff conceded that his civil conspiracy claim against CSX failed to state a claim upon which relief could be granted.  Consequently, he proposed an amended complaint containing four counts: Count I outrageous conduct and Count II defamation against CSX, Crawford, and McQuain; Count III civil conspiracy against Crawford and McQuain; and Count IV punitive damages against CSX.  Absent from the amended complaint are plaintiff's original Count I wrongful discharge claim and part of plaintiff's original Count V civil conspiracy insofar as it is now asserted only against Crawford and McQuain and not CSX.

---

Railroad Safety Act inasmuch as these claims were based on allegations that plaintiff was discharged and otherwise discriminated against in retaliation for making safety complaints against CSX.   Additionally, CSX argued that plaintiff's outrageous conduct and defamation claims constituted minor disputes so as to be preempted by the Railway Labor Act.  Lastly, CSX argued that plaintiff's claim for civil conspiracy against CSX failed to state a claim upon which relief could be granted inasmuch as a corporation cannot conspire with its employees for purposes of a civil conspiracy claim.  Defendants Crawford and McQuain adopted and incorporated by reference the arguments of CSX with respect to each of the claims asserted against Crawford and McQuain.

By order entered November 14, 1997, plaintiff's motion to amend his complaint was granted, defendants' initial motions to dismiss were denied as moot, and defendants were granted leave to file renewed motions to dismiss.  It is the renewed motions to dismiss that are the subject of this order.

In CSX's renewed motion to dismiss, filed November 24, 1997, CSX contends that the court lacks subject matter jurisdiction inasmuch as plaintiff's Count I claim for outrageous conduct and Count II claim for defamation are preempted by Section 20109 of the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20101, et seq.  As further grounds for its motion to dismiss, CSX contends that these claims are also preempted by the Railway Labor Act.  In defendants Crawford and McQuain's joint motion to dismiss, Crawford and McQuain also argue that Counts I and II of plaintiff's amended complaint are preempted by both FRSA and the Railway Labor Act.  Additionally, Crawford and McQuain argue that plaintiff's Count III civil conspiracy claim against the individual defendants fails to state a claim upon which relief may be granted.

6

## II.  Discussion

A.  <u>Preemption Under The Federal Railroad Safety Act</u>

Each of the defendants moves to dismiss Counts I and II of plaintiff's amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction on the ground that these claims are preempted by FRSA.  FRSA expressly prohibits railroads from terminating or in any way discriminating against railroad employees who make complaints about railroad safety issues, and provides a federal remedy to railroad employees who claim that they have been terminated or discriminated against in any way in retaliation for making safety complaints.  Specifically, FRSA provides that:

> A railroad carrier engaged in interstate
> or foreign commerce may not discharge
> or in any manner discriminate against
> any employee because the employee,
> whether acting for the employee or as
> a representative, has --
>
> (1) filed a complaint or brought or
> caused to be brought a proceeding
> related to the enforcement of this part,
> or, as applicable to railroad safety,
> chapter 51 or 57 of this title; or
>
> (2) testified in that proceeding.

49 U.S.C. § 20109(a).  FRSA goes on to provide that:

7

> A dispute, grievance, or claim arising
> under this section is subject to
> resolution under Section 3 of the
> Railway Labor Act (45 U.S.C. § 153).
> In a proceeding by the National
> Railroad Adjustment Board, a division
> of or delegate of the Board, or
> another board of adjustment established
> under Section 3 to resolve the dispute,
> grievance, or claim, the proceeding
> shall be expedited and the dispute,
> grievance, or claim shall be resolved
> not later than 180 days after it is
> filed.  If the violation is a form of
> discrimination that does not involve
> discharge, suspension, or another
> action affecting pay, and no other
> remedy is available under this sub-
> section, the Board, division, delegate,
> or other board of adjustment may award
> the employee reasonable damages,
> including punitive damages, of not
> more than $20,000.

49 U.S.C. § 20109(c).

As noted above, plaintiff's original complaint alleged

that he was wrongfully discharged in retaliation for making

safety complaints.  Specifically, Count I of plaintiff's original

complaint alleged that:

> Plaintiff's termination by CSX and the
> accusations brought by its agents,
> Crawford and McQuain, were wrongful and
> were motivated by the plaintiff's
> repeated complaints that CSX was forcing
> him to perform tasks for the company
> that substantially impaired or inter-
> fered with his ability to perform

8

Federal Railroad Administration-mandated
railroad track safety inspections for
the benefit of CSX and the public at
large.

* * *

CSX, acting through its agents Crawford
and McQuain and other company officials,
disregarded and/or concealed compelling
evidence that the charges against the
plaintiff were false and nevertheless
discharged the plaintiff in retaliation
for his safety complaints.

(Compl. ¶¶ 13, 14).  Plaintiff's original complaint also included

causes of action against all three defendants for outrageous

conduct and separate claims for defamation, one against CSX and

the other against Crawford and McQuain, individually.

Plaintiff's Count II outrageous conduct claim was based

on the following allegations:

The actions of the defendants CSX, Crawford
and McQuain in dismissing the plaintiff,
bringing retaliatory charges against the
plaintiff, and/or providing false testimony
against the plaintiff constituted intentional,
malicious and outrageous conduct.

In pleading his Count III defamation cause of action

against CSX, plaintiff alleged that:

The defendant CSX, by and through its agents
Crawford and McQuain, did defame the plaintiff
by negligently and/or maliciously accusing him

9

of working while under the influence of
alcohol, which personal accusations the
defendant and/or its agents knew to be false,
and then knowingly, intentionally and
maliciously communicated the same to third
persons.


Plaintiff alleged the following with respect to his

Count IV defamation claim against Crawford and McQuain:


The defendants Crawford and McQuain, in
addition to defaming the plaintiff for
motivations falling within the scope of
their employment by CSX, did also make
defamatory remarks about plaintiff
motivated [by] reasons falling outside
the scope of their employment by CSX.
Specifically, the defendants Crawford
and McQuain were aware that the plaintiff
was monitoring the defendants' activities
and was aware of suspicious behavior
surrounding the diversion of company
property and materials to the defendants
for their personal benefit. Accordingly,
the defendants . . . did defame the
plaintiff by negligently and/or
maliciously accusing him of working
while under the influence of alcohol,
which personal accusations the
defendants knew to be false, and then
knowingly and intentionally communi-
cating the same to third persons.


(Compl. ¶¶ 17, 20, 23-24).


Defendants initially filed Rule 12(b)(1) motions to

dismiss on the ground that plaintiff's wrongful discharge and

defamation claims were preempted by FRSA. Plaintiff subsequently

10

filed a motion to amend his complaint to remove all allegations concerning retaliatory discharge, which the court granted. Plaintiff's amended complaint alleges causes of action against all three defendants for outrageous conduct, defamation, and punitive damages, and a separate cause of action against Crawford and McQuain for civil conspiracy. Absent from plaintiff's amended complaint are all allegations that the defendants' outrageous conduct or defamatory statements were motivated by plaintiff's whistleblowing. Instead, Count I of plaintiff's amended complaint now alleges that:

> The actions of the defendants . . . in bringing charges against the plaintiff that they knew to be false and in intentionally concealing evidence that would materially and significantly benefit the plaintiff in defending the charges brought against him constituted intentional, malicious and outrageous conduct.

(Amended Compl. ¶ 10). Plaintiff further alleges in Count II that:

> The defendants did defame the plaintiff by recklessly and/or maliciously accusing him of working while under the influence of alcohol, which accusations the defendants, individually or through their agents and employees, knew or should have known were false, and then knowingly, intentionally,

11

            and maliciously communicated the same to
            third persons.

(Amended Compl. ¶ 13).

        Defendants contend that plaintiff is precluded from

changing the operative facts in his amended complaint to avoid

preemption of his claims.  According to defendants, plaintiff's

failure to dispute or contradict the factual allegations

contained within his original complaint necessarily suggests that

the claims set forth in his amended complaint are still based on

the underlying allegation that he was discharged, defamed,

subjected to outrageous conduct and otherwise discriminated

against in retaliation for making safety complaints.  Defendants

point to plaintiff's assertion in his memorandum in support of

his motion to amend that he "still maintains that his safety

complaints motivated the defendants to engage in their ultimate

wrongful conduct" and his concession in his responsive brief that

while he removed all such allegations from his amended complaint,

plaintiff "certainly [does] not deny or abandon the . . .

allegations against the defendants as they pertain[ ] to

defendants' retaliatory intent or other improper motives in

taking actions against him."  (Plaintiff's Memorandum of Law in

Support of Motion to Amend Complaint, at p. 4; Plaintiff's

                            12

Response to Defendant CSX's Motion to Dismiss, at p. 4).

In advancing their argument, defendants rely on the unpublished opinion of the United States Court of Appeals for the Fourth Circuit in <u>Binkley v. Loughran</u>, 940 F.2d 651, 1991 WL 135229 (4th Cir. 1991) (holding that district court must consider all of the pleadings and not just the allegations contained in an amended complaint before deciding the preemption issue).  In this circuit, reliance on unpublished opinions of this circuit is generally treated with some disfavor.  <u>See</u> Fourth Circuit Local Rule 36(c).[5]  In view, however, of the absence of other authority

---

[5] Rule 36(c) provides, in pertinent part, that:

> In the absence of unusual circumstances, this Court will not cite an unpublished disposition of any of its published opinions or unpublished dispositions. Citation of this Court's unpublished dispositions in briefs and oral arguments in this Court and in the district courts within this Circuit is disfavored, except for the purpose of establishing res judicata, estoppel, or the law of the case.
>
> If counsel believes, nevertheless, that an unpublished disposition of any court has precedential value in relation to a material issue in a case and that there is no published opinion that would serve as well, such disposition may be cited if counsel serves a copy thereof on all parties in the case and on the Court.

13

of this circuit with respect to the preemption issue dealt with
in Binkley, the court finds that the circumstances are
sufficiently unusual as to merit consideration of Binkley as
having precedential value, particularly inasmuch as there is no
published opinion that would serve as well.

The court finds the reasoning employed in Binkley to be
persuasive. Without explicitly so stating, Binkley appears to
have applied the "artful pleading" exception to the well-pleaded
complaint rule and looked behind the plaintiff's complaint to
determine whether her claims were preempted by federal law.

In order to determine whether an action arises under
federal law, a court must typically apply the well-pleaded
complaint rule. Caterpillar Inc. v. Williams, 482 U.S. 386, 392
(1987). This rule "provides that federal jurisdiction exists
only when a federal question is presented on the face of
plaintiff's properly pleaded complaint." Id. Because "[t]he
well-pleaded complaint rule applies to the original jurisdiction
of the district courts as well as to their removal jurisdiction,"
Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust
for S. Cal., 463 U.S. 1, 10 n. 9 (1983), a plaintiff "may avoid
federal jurisdiction by exclusive reliance on state law" in
pleading his case. Caterpillar Inc., 482 U.S. at 392.

14

Generally, federal preemption is a defense to a plaintiff's action, and as such, "it does not appear on the face of a well-pleaded complaint." Metropolitan Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987). Consequently, the preemption defense "does not authorize removal to federal court." Id. In certain circumstances, however, "the preemptive force of [federal law] is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." Caterpillar Inc., 482 U.S. at 393 (quoting Metropolitan Life, 481 U.S. at 65). This so-called complete preemption occurs when "an area of state law has been [so] completely preempted, [that] any claim purportedly based on the preempted state law is considered . . . a federal claim." Id. at n. 4. When state law claims are completely preempted by federal law, the plaintiff's complaint arises under federal law and removal is proper. See Metropolitan Life, 481 U.S. at 67.

The "artful pleading" doctrine has developed, however, as an exception to the rule limiting the court's examination to the face of the complaint when it appears the plaintiff seeks to conceal the federal nature of his claim. See Scott v. Greiner, 858 F. Supp. 607 (S.D. W. Va. 1994); State of Maryland v. Phillip

15

Morris, Inc., 934 F. Supp. 173 (D. Md. 1996).  In determining whether a complaint is artfully pleaded, the court "may look behind it, or 'peek,' to ascertain facts that would appear in a well-pleaded complaint."  J.H.W., Sr., Inc. v. Exxon Co., 921 F. Supp. 1436, 1441 (D. Md. 1996).  "Application of the artful pleading doctrine is most appropriate in cases where federal law altogether preempts and supplants state law, but plaintiff seeks to avoid the effect of preemption by pleading only state causes of action."  Id.

"[W]hether a state cause of action is completely preempted in a particular case is a question of congressional intent."  Allis-Chalmers Corp. v. Lueck, 471 U.S. 202, 208 (1985).  In this case, "congressional intent . . . is clear," inasmuch as FRSA "includes an explicit preemption provision . . . ."  Rayner v. Smirl, 873 F.2d 60, 65, cert. denied, 493 U.S. 876 (1989).  Consequently, the federal remedy provided by FRSA completely preempts and supplants a rail worker's state law wrongful discharge claim.  Id.

Here, plaintiff abandoned his state law wrongful discharge claim and removed all allegations in his amended complaint that other adverse employment actions taken against him were motivated by defendants' desire to retaliate against him for

16

making safety complaints.  Plaintiff now contends that his
amended claims for outrageous conduct and defamation are not
preempted by FRSA inasmuch as they are no longer based on his
retaliatory allegations.  Defendants argue otherwise, relying on
plaintiff's assertions and concessions in his supporting briefs
filed with the court that defendants' wrongful conduct was
motivated by a desire to retaliate against plaintiff for making
safety complaints.

    While the "artful pleading" exception is clearly
recognized in this circuit, it nevertheless must be sparingly
applied.  J.H.W., Sr., Inc., 921 F. Supp. at 1441.  As noted
above, however, the application of this exception is most
appropriate in cases like this one, where a plaintiff attempts to
avoid preemption by removing from his complaint allegations which
otherwise invoke preemption.  The court finds it appropriate,
therefore, to look behind the face of plaintiff's amended
complaint and to consider all of the plaintiff's pleadings before
the court in deciding the preemption issue.  In doing so, the
court finds that plaintiff's Count I claim for outrageous
conduct, Count II claim for defamation, and Count IV claim for
punitive damages are each based upon his contention that he was
discriminated against by defendants in retaliation for making

17

safety complaints.  Each claim was originally pled in plaintiff's complaint as having been the direct consequence of plaintiff's safety complaints and plaintiff has continued to assert in his supporting briefs filed with the court that his safety complaints motivated the defendants to engage in wrongful conduct towards plaintiff.

Having found that plaintiff's Count I claim for outrageous conduct, Count II claim for defamation, and Count IV claim for punitive damages are based upon allegations of retaliation by defendants, the court concludes that each of these claims is completely preempted by FRSA inasmuch as FRSA provides railroad employees who are "harassed, discriminated against, or discharged by their employers for reporting safety violations" with an exclusive remedy against their employers.[6]  Rayner, 873 F.2d at 64 (citing H.R. Rep. No. 96-1025, 96th Cong., 2d Sess., reprinted in 1980 U.S. Code Cong. & Admin. News 3830, 3840).  While defendants do not explicitly suggest that plaintiff's punitive damages claim is also preempted by FRSA, the court finds this to be the case inasmuch as FRSA provides plaintiff with the

---

[6] Having found that plaintiff's claims for outrageous conduct and defamation are completely preempted by FRSA, the court need not address the defendants' contention that these claims are also preempted by the Railway Labor Act.

18

right to collect reasonable damages, including punitive damages,

for adverse employment actions falling short of discharge or

suspension.  See 49 U.S.C. § 20109(c).

B.   Civil Conspiracy

In addition to his claims for outrageous conduct,

defamation, and punitive damages, plaintiff alleges a cause of

action against defendants Crawford and McQuain for civil

conspiracy.  Specifically, Count III of plaintiff's amended

complaint alleges that:

> Prior to CSX's termination of the plaintiff,
> the defendants Crawford, McQuain and other
> unknown persons did intentionally combine,
> conspire and act with express or tacit
> agreement to commit wrongful acts against
> the plaintiff, including but not limited to
> the levying and maintenance of charges
> against plaintiff that he was under the
> influence of alcohol while on the job,
> which accusations the defendants knew to
> be false.

(Amended Compl. ¶ 16).

Defendants Crawford and McQuain have moved the court

for dismissal of plaintiff's civil conspiracy claim pursuant to

Rule 12(b)(6) of the Federal Rules of Civil Procedure, arguing

that plaintiff has failed to allege facts sufficient to support his civil conspiracy claim.

Under the "notice pleading" scheme of Rule 8(a)(2) of the Federal Rules of Civil Procedure, a claim is sufficient if it contains "a 'short and plain statement of the claim' which gives the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Conley v. Gibson, 355 U.S. 41, 47 (1957).  In deciding whether to dismiss a claim pursuant to Rule 12(b)(6), the court must read the complaint liberally in favor of plaintiff.  Id. at 45-46.  A claim is sufficient so long as plaintiff has "colorably stat[ed] facts which, if proven, would entitle him to relief." Adams v. Bain, 697 F.2d 1213, 1216 (4th Cir. 1982).

It is well settled that civil conspiracy requires concerted action by two or more persons or entities.  Cook v. Heck's, Inc., 342 S.E.2d 453, 460 (W. Va. 1986); Dixon v. American Indus. Leasing Co., 253 S.E.2d 150, 152 (W. Va. 1979). Inasmuch as a corporation can act only through its agents or employees, an agent acting on behalf of his corporation cannot be said to have conspired with the corporation in achieving an illegal objective since in essence the corporation would be conspiring with itself.  See, e.g., Bellamy v. Mason's Stores,

20

Inc., 508 F.2d 504 (4th Cir. 1974); Greenville Publishing Co.,
Inc. v. Dailey Reflector, Inc., 496 F.2d 391 (4th Cir. 1974).  In
order to be personally liable for civil conspiracy, an agent,
employee or officer of a corporation must have "an independent
personal stake in achieving the corporation's illegal objective."
Greenville, 496 F.2d at 399.

       Here, in order for plaintiff to state a claim for civil
conspiracy against the individual defendants, plaintiff must
allege that Crawford and McQuain each had an independent personal
stake in subjecting plaintiff to outrageous conduct and
defamatory statements.  In his original complaint, plaintiff
alleged that Crawford and McQuain's defamatory remarks were made
both within and without the scope of their employment.  Absent
from plaintiff's amended complaint, however, are all allegations
that the individual defendants made allegedly false accusations
against plaintiff outside the scope of their employment.
Plaintiff concedes as much in his responsive brief to the motion
to dismiss filed by defendants Crawford and McQuain, but does set
forth in a brief that he plans to pursue his civil conspiracy
claim against them on the theory that they conspired against him
in their individual capacities for purposes personal to them.
(Plaintiff's Response to Defendants Crawford and McQuain's Motion

                              21

to Dismiss, at p. 2).  He fails, however, to include within the amended complaint or even his brief any factual assertion concerning what personal stake, if any, defendants Crawford and McQuain had in subjecting plaintiff to the alleged wrongful conduct.

While the court has elected to employ the "artful pleading" doctrine to look behind the amended complaint with respect to plaintiff's Count I outrageous conduct claim and Count II defamation claim, the court finds that it would be inappropriate to apply this doctrine to determine whether plaintiff has alleged facts sufficient to support his Count III civil conspiracy claim against Crawford and McQuain.  As noted previously, the "artful pleading" doctrine must be sparingly applied and is typically reserved for those situations, unlike Count III, where preemption is at issue.  Inasmuch as plaintiff's amended complaint fails to allege that the individual defendants conspired outside the scope of their employment for purposes personal to them, plaintiff's Count III claim does not make out a cause of action for civil conspiracy under West Virginia law.

### III.   Conclusion

For the reasons stated above, it is ORDERED that:

1.   Defendant CSX's motion to dismiss be, and it hereby is, granted.

2.   Defendants Crawford and McQuain's motion to dismiss be, and it hereby is, granted.

3.   Counts I, II, and IV of plaintiff's amended complaint be, and they hereby are, dismissed with prejudice.

4.   Count III of plaintiff's amended complaint be, and it hereby is, dismissed without prejudice.

The Clerk is directed to forward copies of this order to all counsel of record.

DATED:  November 18, 1998

JOHN T. COPENHAVER, JR.
United States District Judge

SAMUEL L. KAY, CLERK
U.S. District & Bankruptcy Courts
Southern District of West Virginia
By _____ Deputy

23

UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

CALVIN T. JOHNSON,
     Plaintiff,

v.                                 Civil Action No. 2:97-0895
                                 Court of Appeals No.: _____

CSX TRANSPORTATION, INC.,
a foreign corporation; THOMAS
PRESTON CRAWFORD, individually,
and THOMAS M. McQUAIN, individually,
     Defendants.

CERTIFICATE OF SERVICE

     I, David F. Nelson, of the law firm of Schumacher, Francis, Stennett & Nelson, do hereby

certify that I have served a true copy of the attached **DOCKETING STATEMENT,** together

with all attachments, upon the Defendant - Appellee by depositing the same, postage prepaid, in

United States First Class mail on this the 29th Day of December, 1998, to all counsel at the

addresses listed below:

                    J.H. Mahaney, Esq.
                    Huddleston, Bolen, Beatty, Porter & Copen
                    P.O. Box 2185
                    Huntington, West Virginia 25722-2185

                    Robert M. Losey, Esq.
                    West Virginia Building
                    910 4th Avenue, Suite 200
                    Huntington, West Virginia 25701

                    David F. Nelson, Esq.
                    W.Va. Bar I.D. No. 5754

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT HUNTINGTON

GRADY COLIN KELLY,

      Plaintiff,

v.                                    Civil Action No. _____

NORFOLK & SOUTHERN RAILWAY
COMPANY, d/b/a NORFOLK &
WESTERN RAILWAY COMPANY

      Defendant.

### CERTIFICATE OF SERVICE

The undersigned attorney hereby certifies that he served the foregoing "**Norfolk Southern Railway Company's Notice of Removal**", on the following by depositing a true copy thereof in the regular manner in the United States Mail, at Huntington, West Virginia on the 25th day of August, 1999, to:

Charles W. Armbruster, III, Esquire
Bradley M. Lakin, Esquire
301 Evans Avenue
P.O. Box 229
Wood River, Illinois 62095.

Thomas Plymale
P.O. Box 627
Wayne, WV 25570